UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRISTOPHER WALLACE**, <br><br> Plaintiff, <br><br> v. <br><br> **EXIDE TECHNOLOGIES,** <br><br> Defendants. | Case No. **2:19-cv-2742** <br><br><br> **JURY DEMANDED** |

## COMPLAINT

Plaintiff Christopher Wallace ("Plaintiff" or "Mr. Wallace"), by and through his undersigned counsel, for his Complaint against Defendant Exide Technologies ("Defendant" or "Exide"), hereby states and alleges as follows:

1. Plaintiff Christopher Wallace is a scientist by trade and was employed with Exide as a Quality Systems Coordinator in the State of Kansas. Mr. Wallace was discriminated and retaliated against because of his disability until he was ultimately terminated for the improper and unlawful reasons described herein.

## PARTIES

2. Mr. Wallace is an individual residing in Kansas City, Kansas who worked for Exide at its 3001 Fairfax Trafficway, Kansas City, Kansas location. At all times material herein, Plaintiff has been entitled to the rights, benefits and protections provided by the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* The above referenced statute provides, among other things, protection from unlawful discrimination and harassment due to an individuals' protected status.

3. Defendant Exide Technologies is a Delaware Corporation registered to do business in, and operating in, the State of Kansas, including operation of the location at which Mr. Wallace

was employed.  Exide can be served through its designated registered agent The Corporation Company, Inc. 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

## JURISDICTION AND VENUE

4.	The Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008 (collectively referred to herein as the "ADA") authorizes court actions by private parties to recover damages for unlawful employment discrimination on the basis of a disability, perceived or actual.  Jurisdiction over Plaintiff's ADA claim is based upon 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(f)(3). At all times material herein, Exide was a covered employer as defined by the ADA in that Exide employed more than 25 employees in each of the 20 or more calendar weeks in the current or proceeding calendar year and was thus required to provide the rights, benefits and protections of the ADA. 42 U.S.C. § 12111(5).

5.	This Court has supplemental jurisdiction for all claims asserted under Kansas state common law, as these claims are part of the same case and controversy, derive from a common nucleus of operative facts, and will not substantially dominate over the ADA claims. Exercising supplemental jurisdiction would be in the interest of judicial economy, convenience, fairness and comity.

6.	Venue is also proper in the United States District Court for the District of Kansas because the acts, omissions, and occurrences giving rise to this matter occurred in the State of Kansas.

7.	Plaintiff filed a charge with the Equal Employment Opportunity Commission concerning the facts at issue in this matter.  Plaintiff's Notices of Right to Sue are attached hereto as Exhibit 1.  Plaintiff's lawsuit was filed within 90 days of the Notices of Right to Sue to Plaintiff.  Thus, Plaintiff has satisfied all procedural, administrative and judicial prerequisites to filing suit.

## FACTS

8. On or about June 11, 2018, Mr. Wallace began his employment with Exide until his wrongful termination without prior warning on or about September 26, 2018.

9. Mr. Wallace suffers from diagnosed medical conditions, including generalized anxiety disorder and major depressive disorder, that qualify for protection as disabilities.

10. On or about September 24, 2018, Mr. Wallace advised Exide of his need for treatment for his disability.

11. On or about the same day, Mr. Wallace instructed Plaintiff to file his application for short term disability leave with their benefits provider.

12. Plaintiff complied with these instructions and advised Exide's human resources manager Lisa Soto that he had started the short-term disability claim. Plaintiff also asked Ms. Soto to let him know if there was anything else that he needed to do at this time.

13. Neither Defendant, nor Ms. Soto, responded to Plaintiff about whether he needed to take any further action to effectuate his leave.

14. On or about September 25, 2018, Mr. Wallace emailed his manager and the human resources manager and told them that he needed thirty-days for medical leave. Plaintiff understood that he had approval to receive inpatient treatment at a facility located in California.

15. Following Plaintiff's email to his manager and the human resources manager about his need for thirty-days medical leave, upon information and belief, Plaintiff's manager, the plant manager and the human resources manager met and decided to terminate Mr. Wallace's employment.

16. On or about September 26, 2018, while traveling to California for inpatient treatment, Plaintiff received a phone call from Exide and was advised his employment was being terminated because he was going to be off of work.

17. Plaintiff was shocked by this call. Plaintiff understood that he had been permitted leave to seek treatment for his disability as prescribed by his doctor and asked what he could to do retain his job.

18. Exide Human Resources manager advised him that there was nothing he could do to retain his job but assured him that his treatment would still be paid for by his insurance and/or short-term disability policy.

19. Mr. Wallace continued his trip to California for inpatient treatment; however, a few days later, he was advised that the substantial costs of the inpatient treatment were not going to be covered by insurance and that Exide had cancelled his short-term disability.

20. Plaintiff was left with no choice but to leave the treatment facility in California and return to Kansas City as he was unable to afford the substantial costs of inpatient treatment out of pocket.

21. After his wrongful termination, Mr. Wallace submitted an application for unemployment benefits. His unemployment application was substantially delayed as the unemployment commission was advised he was still employed by Exide. Mr. Wallace attempted to contact Exide about this issue since he had been told he was being fired because he was seeking treatment for his disability.

22. Mr. Wallace did not receive a substantive response from Exide, nor did he receive unemployment benefits.

23. Upon information and belief, Mr. Wallace's position was not immediately filled.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

24. Plaintiff incorporates by reference the statements and allegations contained in the paragraphs above as though more fully and completely set forth herein.

25. At all times material herein, Plaintiff was a member of the class of persons protected by the ADA and has been entitled to the rights, protections and benefits provided by the ADA. Plaintiff has been disabled, or was perceived as disabled, within the meaning of the ADA. Plaintiff suffered from a physical impairment, namely anxiety disorder and major depressive disorder which interfered with major life activities, including caring for oneself, sleeping, concentrating, communicating and working. Also, Exide regarded Plaintiff as disabled.

26. At all material times herein, Plaintiff was qualified to perform the essential functions of his position as Quality Systems Coordinator, either with or without reasonable accommodations.

27. As further described herein, Defendant knew of Plaintiff's disability and Defendant refused to engage in a meaningful interactive process with Plaintiff to determine a reasonable accommodation for his disability and/or refused to provide Plaintiff a reasonable accommodation for his disability, including, but not limited to, time off for treatment, and/or a modified work schedule to accommodate treatment related to his disability.

28. Plaintiff's disability, or alternatively, Defendant's belief that Plaintiff was disabled, was a motivating factor in Defendant's discharge of Plaintiff, as well as other adverse employment actions as further described herein.

29. As a result of Defendant's wrongful actions, Plaintiff has been damaged, and suffered lost wages, benefits and additional damages, including but not limited to, emotional distress and other compensatory damages.

5

30. Defendant acted with malice and reckless indifference to Plaintiff's legal rights. As such, an award of punitive damages in such sum as is fair and reasonable is warranted.

WHEREFORE, Plaintiff Christopher Wallace demands judgment against Defendant Exide Technologies in an amount to be determined by the jury and prays for: (1) actual damages, including but not limited to, back pay, lost benefits and front pay; (2) compensatory damages, including but not limited to, future pecuniary losses and emotional damages including but not limited to, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses; damages for pain and suffering; (3) pre-judgment interest; (4) all costs, including reasonable attorneys' fees and costs to the fullest extent permitted by 42 U.S.C. § 12205; (5) punitive damages; (6) and such other and further relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## RETALIATION

31. Plaintiff incorporates by reference the statements and allegations contained in the paragraphs above as though more fully and completely set forth herein.

32. Plaintiff engaged in protected activities within the meaning of the ADA in that Plaintiff reported his good faith and reasonable belief that he was disabled within the meaning of the ADA and requested reasonable accommodations for his disability.

33. On or about September 26, 2018, Plaintiff was suddenly and without warning terminated by Defendant and advised he was terminated for taking days off (which days Plaintiff had advised were needed for short-term disability).

34. Plaintiff's engagement in protected activities, including reporting his disability to Defendants, requests for reasonable accommodations and other protected activities as further

described herein, were a basis for Defendant's adverse employment actions against him, including but not limited to terminating Plaintiff's employment and cancelling Plaintiff's employment benefits.

35. Defendant's treatment of Plaintiff in the terms and conditions of his employment was willful, and done pursuant to the Defendant's policy, custom, or business practice designed and intended to punish him for asserting his rights under the law, and to discourage other employees from doing the same in the future, all in willful and conscious disregard for Plaintiff's rights under the law

36. As a result of Defendant's wrongful actions, Plaintiff has been damaged and suffered lost wages, benefits and additional damages.

WHEREFORE, Plaintiff Christopher Wallace demands judgment against Defendant Exide Technologies in an amount to be determined by the jury and prays for: (1) actual damages, including back pay, lost benefits and front pay; (2) pre-judgment interest; (3) reasonable attorneys' fees and costs to the fullest extent as provided by 42 U.S.C. § 12205; (4) and such other and further relief as the Court deems just and proper.

## COUNT III
## FRAUD BY SILENCE

37. Plaintiff incorporates by reference the statements and allegations contained in the paragraphs above as though more fully and completely set forth herein.

38. On or about September 24, 2018, Exide advised Mr. Wallace that he needed to contact Unum to complete the paperwork for short term disability.

39. On or about September 24, 2018, Mr. Wallace advises Exide through its Human Resources Manager, Lisa Soto, that he had started his short-term disability claim and asked if there was anything else that he needed to do for his disability.

7

40. On or about September 25, 2018, Mr. Wallace advised Defendant, including Human Resources Manager Ms. Soto, that he needed to be out for approximately the next month for medical leave and that he had been working with Unum.

41. Mr. Wallace understood that he had approval to proceed to treatment and never received a response from Exide or Ms. Soto about what else he needed to do to secure leave or handle his disability.

42. On or about the following day, while Mr. Wallace was in transit for treatment, Defendant, through Ms. Soto contacted Mr. Wallace and advised that his employment was being terminated because he needed to take time off for medical leave.

43. Defendant had a duty to respond to Mr. Wallace if there was something more that he needed to do to accommodate his disability, including discuss alternative reasonable accommodations (if short-term leave was not reasonable). Alternatively, Defendant, through its managers, had a duty to advise Mr. Wallace that he was not approved to take unpaid days for his serious medical condition or that Mr. Wallace would be disciplined, including terminated, if he took unpaid days for his medical condition.

44. Defendant, including its managers, were in a position of superior knowledge and owed a duty of care to Mr. Wallace to ensure that he understood what was required of him when asked.

45. Defendant's intentional failure to communicate with Mr. Wallace was material to Mr. Wallace's decision to take time off for short-term disability as he did not intend to abandon his employment at Exide.

46. Mr. Wallace justifiably and reasonably relied upon Defendant's silence that there was nothing more that he needed to do to secure his leave and used ordinary care in following

Defendant's instructions and relying upon their silence that there was nothing more that needed to be done.

47. As a direct and proximate result of the representations and information described above, Mr. Wallace has been damaged representing lost wages, lost benefits, emotional distress, and other damages incurred as a direct and natural consequence of Mr. Wallace's acting in reliance upon Defendant's statements, or the lack thereof.

48. Defendant's action in conveying that Mr. Wallace had done all he needed to do to take short term medical leave was outrageous and with reckless indifference to the rights of others. An award of punitive damages in such sum as is fair and reasonable is warranted by Defendant's conduct.

WHEREFORE, Plaintiff Christopher Wallace demands judgment against Defendant Exide Technologies in such a sum as is fair and reasonable, for punitive damages in such sum as is fair and reasonable, the costs of this action, and for such other and further relief as the Court deems just and proper.

## COUNT IV
## FRAUDULENT MISREPRESENTATION

49. Plaintiff incorporates by reference the statements and allegations contained in the paragraphs above as though more fully and completely set forth herein.

50. On or about September 26, 2019, while Mr. Wallace was in transit for treatment, Defendant, through Ms. Soto contacted Mr. Wallace and advised that his employment was being terminated because he needed to take time off for medical leave.

51. Exide Human Resources manager advised Mr. Wallace that there was nothing he could do to retain his job but assured him that his treatment would still be paid for by his insurance and/or short-term disability policy.

52. Mr. Wallace continued his trip to California for inpatient treatment.

53. Unbeknownst to Mr. Wallace, on or about September 27, 2019, Defendant told Unum to cancel Mr. Wallace's short-term disability claim.

54. A few days after arriving at the inpatient treatment facility, Mr. Wallace was advised that Exide had cancelled his short-term disability and the cost of treatment would not be covered.

55. Defendant knowingly and intentionally misrepresented to Mr. Wallace that he would retain his employee benefits. Alternatively, if something had changed, Defendant had a duty to advise Mr. Wallace of the change in circumstances so he would not continue to incur medical expenses.

56. Defendant, including its managers, were in a position of superior knowledge with respect to his employee benefits and owed him a duty to be truthful when asked about the status of these benefits.

57. Defendant's intentional representation to Mr. Wallace that despite his termination he would still have short-term disability insurance was material to Mr. Wallace decision to continue forward with inpatient treatment as he otherwise could not have afforded it.

58. Mr. Wallace justifiably and reasonably relied upon Defendant's representations about his short-term disability insurance.

59. As a direct and proximate result of the representations and information described above, Mr. Wallace has been damaged representing increased medical costs, and other damages incurred as a direct and natural consequence of Mr. Wallace's acting in reliance upon Defendant's statements, or the lack thereof.

60. Defendant's action in conveying that Mr. Wallace would retain his short-term disability insurance was outrageous and with reckless indifference to the rights of others. An award of punitive damages in such sum as is fair and reasonable is warranted by Defendant's conduct.

WHEREFORE, Plaintiff Christopher Wallace demands judgment against Defendant Exide Technologies in such a sum as is fair and reasonable, for punitive damages in such sum as is fair and reasonable, the costs of this action, and for such other and further relief as the Court deems just and proper.

## COUNT V
## NEGLIGENT MISREPRESENTATION

61. Plaintiff incorporates by reference the statements and allegations contained in the paragraphs above as though more fully and completely set forth herein.

62. On or about September 26, 2019, while Mr. Wallace was in transit for treatment, Defendant, through Ms. Soto, contacted Mr. Wallace and advised that his employment was being terminated because he needed to take time off for medical leave.

63. Exide Human Resources manager advised Mr. Wallace that there was nothing he could do to retain his job but assured him that his treatment would still be paid for by his insurance and/or short-term disability policy.

64. Mr. Wallace continued his trip to California for inpatient treatment.

65. Unbeknownst to Mr. Wallace, on or about September 27, 2019, Defendant told Unum to cancel Mr. Wallace's short-term disability claim.

66. A few days after arriving at the inpatient treatment facility, Mr. Wallace was advised that Exide had cancelled his short-term disability and the cost of treatment would not be covered.

67. In supplying the information described above, Defendant failed to exercise reasonable care to ensure the accuracy of said information. The information supplied to Mr. Wallace, including that he would still be able to obtain coverage under the short-term disability policy was in fact false.

68. The information described above was intentionally provided by Defendant's human resources representative to Mr. Wallace, a member of the class of employees for whose benefit Defendant is responsible for employment and leave administration.

69. Defendant, including its managers, were in a position of superior knowledge with respect to his employee benefits and owed Mr. Wallace a duty to be truthful and to accurately provide information to Mr. Wallace when asked about the status of this benefits.

70. Mr. Wallace justifiably and reasonably relied upon Defendant's representations about his short-term disability insurance and traveled to California for treatment and began treatment.

71. As a direct and proximate result of the false information supplied by Defendant concerning his short-term disability insurance, Mr. Wallace has been damaged, including incurring medical bills, and other damages incurred as a direct and natural consequence of Mr. Wallace's acting in good faith reliance on Defendant's negligent misrepresentations.

72. Defendant's action in conveying that Mr. Wallace would retain his short-term disability insurance, or in the alternative failing to correct the statement, was outrageous and with reckless indifference to the rights of others. An award of punitive damages in such sum as is fair and reasonable is warranted by Defendant's conduct.

WHEREFORE, Plaintiff Christopher Wallace demands judgment against Defendant Exide Technologies in such a sum as is fair and reasonable, for punitive damages in such sum as is fair

and reasonable, the costs of this action, and for such other and further relief as the Court deems just and proper.

## COUNT VI
## NEGLIGENT NONDISCLOSURE

73. Plaintiff incorporates by reference the statements and allegations contained in the paragraphs above as though more fully and completely set forth herein.

74. On or about September 24, 2018, Exide advised Mr. Wallace that he needed to contact Unum to complete the paperwork for short term disability.

75. On or about September 24, 2018, Mr. Wallace advised Exide through its Human Resources Manager, Lisa Soto, that he had started his short-term disability claim and asked if there was anything else that he needed to do for his disability.

76. On or about September 25, 2018, Mr. Wallace advised Defendant, including Human Resources Manager Ms. Soto, that he needed to be out for approximately the next month for medical leave and that he had been working with Unum.

77. Mr. Wallace understood that he had approval to proceed to treatment and never received a response from Exide or Ms. Soto about what else he needed to do to secure leave or handle his disability.

78. On or about the following day, while Mr. Wallace was in transit for treatment, Defendant, through Ms. Soto contacted Mr. Wallace and advised that his employment was being terminated because he needed to take time off for medical leave. Defendant also advised Mr. Wallace that there was nothing he could do to retain his job but assured him that his treatment would still be paid for by his insurance and/or short-term disability policy.

79. Mr. Wallace continued his trip to California for inpatient treatment.

80. Unbeknownst to Mr. Wallace, on or about September 27, 2019, Defendant told Unum to cancel Mr. Wallace's short-term disability claim.

81. A few days after arriving at the inpatient treatment facility, Mr. Wallace was advised that Exide had cancelled his short-term disability and the cost of treatment would not be covered.

82. Defendant had a duty to respond to Mr. Wallace when he asked if there was something more that he needed to do to accommodate his disability, including discussing alternative reasonable accommodations (if short-term leave was not reasonable). Alternatively, Defendant, through its managers, had a duty to advise Mr. Wallace that he was not approved to take unpaid days for his serious medical condition or that Mr. Wallace would be disciplined, including terminated, if he took unpaid days for his medical condition.

83. Defendant, including its managers, were in a position of superior knowledge and owed a duty of care to Mr. Wallace to ensure that he understood what was required of him when he directly asked for instructions about short-term leave.

84. Defendant's failure to communicate with Mr. Wallace was material to Mr. Wallace's decision to take time off for short-term disability as he did not intend to abandon his employment at Exide.

85. Mr. Wallace justifiably and reasonably relied upon Defendant's silence that there was nothing more that he needed to do to secure his leave and used ordinary care in following Defendant's instructions and relying upon their silence that there was nothing more that needed to be done.

86. As a direct and proximate result of the representations and information described above, Mr. Wallace has been damaged representing medical expenses, lost wages, lost benefits,

emotional distress, and other damages incurred as a direct and natural consequence of Mr. Wallace's acting in reliance upon Defendant's statements, or the lack thereof.

87. Defendant's action in conveying that Mr. Wallace had done all he needed to do to take short term medical leave was outrageous and with reckless indifference to the rights of others. An award of punitive damages in such sum as is fair and reasonable is warranted by Defendant's conduct.

WHEREFORE, Plaintiff Christopher Wallace demands judgment against Defendant Exide Technologies in such a sum as is fair and reasonable, for punitive damages in such sum as is fair and reasonable, the costs of this action, and for such other and further relief as the Court deems just and proper.

## PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas has the place of trial.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Respectfully submitted,

**CRIMMINS LAW FIRM LLC**

By: *s/ Virginia Stevens Crimmins*
Virginia Stevens Crimmins, KS #20617
Matthew R. Crimmins, KS #20707
214 S. Spring Street
Independence, Missouri 64050
Telephone:  816-974-7220
Facsimile:  855-974-7020
v.crimmins@crimminslawfirm.com
m.crimmins@crimminslawfirm.com

**ATTORNEYS FOR PLAINTIFF**